UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

OLD NATIONAL BANCORP, an )
Indiana corporation, and OLD )
NATIONAL BANK, a National Banking )
Association, )
          )   Case No.:  3:19-cv-56
        Plaintiffs, )
vs. )
          )
KEVIN MURPHY, TONI WANDER, )
and LEGACY WEALTH PARTNERS, )
          )
        Defendants. )

## COMPLAINT

Old National Bancorp and Old National Bank (collectively the "Plaintiff" or "ONB"), for their Complaint against Kevin Murphy ("Murphy"), Toni Wander ("Wander"), and Legacy Wealth Partners ('Legacy") (collectively "Defendants"), state as follows.

## INTRODUCTION AND NATURE OF THE CASE

1.       This case arises out of Defendants' willful misappropriation of trade secrets, breach of fiduciary duty of loyalty, breach of contract, interference with contract and business relationships, false advertising, and false association.

2.       Defendants Murphy and Wander were previously employed by ONB to provide investment and wealth management services to ONB's clients.  While highly compensated employees of ONB, Murphy and Wander surreptitiously made extensive arrangements to form their own financial services business, Legacy Wealth Partners ("Legacy").  Murphy and Wander created Legacy while employed by ONB and by using ONB's confidential, proprietary, and trade secret information for the purpose of competing with ONB and eventually stealing ONB's clients in violation of contractual and common law obligations.

3.     While still employed by ONB, Murphy and Wander marketed themselves to ONB clients using the logo and brand developed for the investment business they now run together as partners.  For example, Murphy sent numerous emails to ONB clients which included the Legacy logo in the signature line, a logo now prominently displayed on Legacy's website and Facebook page.

4.     Defendants have misappropriated ONB's trade secrets, improperly disclosing ONB trade secrets to each other and to Legacy Wealth Partners, including customer information, customer preferences, customer contact information, customer risk tolerance, customer portfolios, and customer history.

5.     As a direct and proximate result of Defendants' conduct, ONB has lost significant business in the form of individual investment accounts transferred away from ONB and holding millions of dollars for numerous clients and has lost the value of its trade secrets.

6.     This lawsuit, based on federal question jurisdiction, diversity jurisdiction, and supplemental jurisdiction, seeks redress from the Defendants.

## PARTIES

7.     Old National Bancorp is an Indiana corporation whose principal place of business is located in Evansville, Indiana.  Old National Bancorp's corporate headquarters are located at One Main Street, Evansville, IN 47708.  Old National Bancorp is a citizen of Indiana for purposes of diversity.  Old National Bank is a National Banking Association with its designated main office in Evansville, Indiana.  Old National Bank is a citizen of Indiana for purposes of diversity.  *See Evan v. Diners Club Int'l Ltd.,* No. 2:16-CV-178-RL-PRC, 2017 WL 4784667, at *2 (N.D. Ind. Oct. 24, 2017) (citing *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 308 (2006) (holding national banks are citizens of states where designated main office is located for purposes of citizenship under 28 U.S.C. § 1348)).

8.     Defendant Kevin Murphy is a citizen of Michigan and was a Financial Advisor with ONB.

2

9.     Defendant Toni Wander is a citizen of Michigan and was a Financial Analyst with ONB's Wealth Management division.

10.    Defendant Legacy Wealth Partners is a partnership comprised of two senior partners, Kevin Murphy and Toni Wander, both citizens of Michigan.

## JURISDICTION AND VENUE

11.    Subject-matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367, as this action arises in part under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* and the federal Lanham Act, 15 U.S.C. § 1125 *et seq.*, and pursuant to 28 U.S.C. § 1367 because all supplemental state law claims arise out of the same case or controversy as the federal claims over which this Court has original jurisdiction.

12.    Subject-matter jurisdiction is further proper in this Court pursuant to 28 U.S.C. § 1332(a), because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13.    This Court has personal jurisdiction over Murphy because he worked for Indiana-based ONB with its headquarters and significant presence in Indiana where many of its trade secrets are located.  Murphy regularly interacted with ONB employees within Indiana, including the President of Investments, an ONB employee located in Evansville, Indiana, the Sales Support Manager, an ONB employee located in Indianapolis, Indiana, and several employees working for the Company's corporate departments in Evansville, Indiana.  Murphy also received administrative support from a Licensed Sales Assistant employed by ONB and located in Evansville, Indiana.   Murphy also visited Indiana as part of his job responsibilities, including visits to Indianapolis and Fort Wayne, and Murphy tendered his resignation to the President of Investments, an ONB employee located in Evansville, Indiana.  Murphy regularly received compensation from ONB through bank transactions initiated and processed in Indiana.  Murphy accessed ONB's trade secrets housed on ONB's servers located in

Indiana, including confidential client information, and he accessed banking information stored within ONB's internal bank system, a system also housed on ONB's servers located in Indiana.  During his ONB employment, Murphy used an email address associated with ONB's investment broker which was transmitted through ONB's internal email network housed in Indiana.  This Court further has personal jurisdiction over Murphy because this action arises from Murphy's knowing and intentional breach of certain contractual, common law, and statutory obligations owed to ONB causing injury within this State and District.

14.     This Court has personal jurisdiction over Wander because she worked for ONB with its significant presence in Indiana where many of its trade secrets are located.  Wander regularly interacted with ONB staff from Indiana and was subject to the employment supervision of ONB employees based in Indiana, including its President of Wealth Management, an ONB employee located in Evansville, Indiana.  Wander also served ONB clients located in Evansville, Indiana and recently made visits to Indiana as part of her job responsibilities. Wander received compensation from ONB through bank transactions initiated and processed in Indiana, accessed ONB's trade secrets housed on ONB's servers located in Indiana, and tendered her resignation to her supervisor, an ONB employee located in Evansville, Indiana.  This Court further has personal jurisdiction over Wander because this action arises from Wander's knowing and intentional breach of legal obligations owed to ONB causing injury within this State and District.

15.     This Court has personal jurisdiction over Defendant Legacy Wealth Partners because this action arises from Legacy's knowing and intentional violations of common law and statutory obligations and interference with contracts entered affecting Indiana-based ONB, misappropriation of trade secrets with an Indiana situs, all causing injury within this State and District.

16.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this District because a substantial part of the events giving rise to this action occurred in this District and because trade

secrets misappropriated by Defendants have their situs in this District.  Venue is further proper in this District pursuant to 29 U.S.C. § 1391(b)(1) as to Legacy Wealth Partners, and otherwise pursuant to 29 U.S.C. § 1391(b)(3), because the Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS REGARDING KEVIN MURPHY

17.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

18.     Kevin Murphy was a highly compensated Financial Advisor employed by ONB. In that position, Murphy was responsible for maintaining and administering confidential client investment accounts for ONB's investment clients, determining clients' needs and cultivating client relationships, creating clients' financial plans, advising clients on investment and banking products, and similar responsibilities associated with ONB's investment and wealth management clients.

19.     As a Financial Advisor employed by ONB, Murphy owed a fiduciary duty of loyalty to ONB.

20.     The investment accounts managed by Murphy for ONB clients included assets totaling approximately $84 million and generated revenue to ONB ranging in amounts from approximately $800,000 to $900,000 annually.  Murphy's client base primarily consisted of high net worth individuals.

21.     Murphy previously was employed by United Bank & Trust ("UB&T") as a Financial Advisor and entered into an employment agreement with UB&T setting forth the duties, responsibilities, and obligations of his employment therewith.

22.     ONB acquired United Bank & Trust in 2014 as a result of a merger between UB&T and Old National Bank through which Old National Bank became the resulting banking entity. Following the merger, ONB assumed all liabilities, rights, and interests of UB&T, including with respect to the employment agreement between Murphy and UB&T.

23. Murphy's employment agreement includes a non-solicitation provision, which requires that Murphy not solicit any client or contact any client upon termination for the purpose of inducing the client to use a different financial service provider other than ONB or to discourage the clients from doing business with ONB.

24. By nature of his employment as a Financial Advisor with ONB, Murphy necessarily utilized the services and products of ONB's investment broker.

25. Beginning as early as 2017, Murphy began conducting financial advisor services for ONB under the guise of a brand name and/or logo, "Your Legacy Our Focus."

26. On February 3, 2017, Murphy attempted to register a trademark with the U.S. Patent and Trademark Office for the word/mark, "Your Legacy Our Focus."

27. Murphy formed a partnership under the name Legacy Wealth Partners which maintains a website under the domain name "www.yourlegacyourfocus.com" and displays the "You Legacy Our Focus" word/mark on the website.

28. Upon information and belief, Murphy submitted expense reimbursement requests to ONB for the costs associated with creating and/or hosting Legacy's website.

29. In April of 2017, Murphy sent a proposal to a prospective ONB client to provide asset management and financial planning services through ONB. The proposal included ONB's business address, telephone, and fax numbers, and Murphy altered the proposal materials to include Legacy's web address (www.yourlegacyourfocus.com) and Legacy's logo directly on the proposal materials. The prospective client who received the proposal materials subsequently became an ONB investment client.

30. Upon information and belief, Murphy sent hundreds of emails, including to prospective and current ONB investment clients, using an email signature displaying the "Your Legacy Our Focus" logo as well as the web address, www.yourlegacyourfocus.com. For example, on March

12, 2018, Murphy sent an email to a current ONB investment client from the email address he used for ONB business which included an email signature displaying the "Your Legacy Our Focus" logo as well as the Legacy web address.

31.     In November 2018, Murphy organized a holiday party with vendors who provide specialty investment products to ONB's investment clients.  The vendors expended thousands of dollars for the costs of the holiday party, and Murphy invited numerous ONB investment clients to attend the party.  Murphy sent invitations to ONB clients describing the party as a "Legacy Event" and stating that it was an event "to promote legacy creation in your families."

32.     Upon information and belief, Murphy falsely informed an ONB client in February 2019 that ONB's investment broker would be changing its reporting system to a method Murphy believed the client did not prefer.  This information was false and believed to be an attempt to induce the client to transfer her accounts to Murphy's business, Legacy.

33.     In December of 2018, one of Murphy's ONB clients expressed dissatisfaction with his services and stated that he felt ignored by Murphy.  During this time, Murphy was no longer reporting to the ONB office on a regular basis and, upon information and belief, was spending significant amounts of time on developing Legacy as an independent investment business.

34.     Murphy did not voluntarily reveal the existence of Legacy Wealth Partners to ONB or otherwise inform ONB employees of his intention to create his own financial services business.

35.     Murphy conspired with Wander to create Legacy Wealth Partners while employed by ONB.

36.     Murphy misappropriated and continues to misappropriate ONB trade secrets, including ONB customer information, customer preferences, customer preferences, customer contact information, customer risk tolerance, customer portfolios, and customer history.

37.     Murphy disclosed such trade secrets to Wander and to Legacy Wealth Partners.

38.     Murphy resigned his employment with ONB on February 16, 2019.

39.     Murphy is presently a Senior Partner at Legacy Wealth Partners.

40.     Legacy Wealth Partners maintains a Facebook page displaying photos of Murphy and Wander.  The page states that Legacy Wealth Partners was founded on February 19, 2019.  On or about February 23, 2019, Legacy posted photos of office space and advertising the office as Legacy's new location.

41.     Upon information and belief, without required consents Murphy provided confidential client information to a third party unaffiliated with ONB, specifically to a University of Michigan professor.

42.     Since resigning his employment with ONB, Murphy has continued to communicate with and solicit ONB's investment and wealth management clients.

43.     Since resigning his employment with ONB, ONB has received requests to transfer investment accounts held by clients formerly managed by Murphy.  As of March 5, 2019, ONB has received requests to transfer investment accounts for approximately 34 accounts associated with 16 ONB clients previously managed by Murphy.  The assets held in these investment accounts total over $17 million.

44.     In addition to being clients managed by Murphy, several of ONB's investment clients, for which ONB has received account transfer requests, were guests at Murphy's "Legacy" holiday party and at least one had received proposal materials containing the Legacy logo.

45.     Murphy, in his individual capacity and as a partner with Legacy, continues to communicate with ONB's clients and use ONB confidential information to induce clients to use Legacy as their financial services provider and/or discourage ONB's client from doing business with ONB.

46.　　ONB has been irreparably damaged and continues to be irreparably damaged by Murphy's illegal conduct.

47.　　ONB has invested significant money in attorneys' fees to investigate and seek to stop Murphy's illegal conduct.

48.　　ONB seeks preliminary and permanent injunctive relief against Murphy, as well as actual, compensatory, consequential, liquidated, special, and punitive damages, costs, and attorneys' fees.

## FACTUAL ALLEGATIONS REGARDING TONI WANDER

49.　　ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

50.　　Wander was a Financial Analyst employed by ONB.

51.　　As a Financial Analyst with ONB, Wander owed a fiduciary duty of loyalty to ONB and was responsible for providing financial planning and related services to ONB's investment and wealth management clients.

52.　　Wander conspired with Murphy, while employed by ONB, to form Legacy Wealth Partners.

53.　　Wander resigned her employment with ONB on February 16, 2019.

54.　　Since resigning her employment with ONB, Wander has continued to communicate with and solicit ONB's investment and wealth management clients and to use ONB's confidential client information.

55.　　Wander has used confidential ONB information to solicit ONB clients and potential clients, including to benefit Legacy.

56.　　Wander is presently performing wealth management services at Legacy Wealth Partners and is a Senior Partner at Legacy Wealth Partners.

57.     Wander did not voluntarily reveal the existence of Legacy Wealth Partners to ONB or otherwise inform ONB employees of her intention to create her own financial services business.

58.     Wander, in her individual capacity and as a partner with Legacy, continues to communicate with ONB's clients and use ONB confidential information to induce clients to use Legacy as their financial services provider and/or discourage ONB's client from doing business with ONB.

59.     Wander his misappropriated ONB trade secrets including customer information, customer preferences, customer preferences, customer contact information, customer risk tolerance, customer portfolios, and customer history.

60.     Wander has provided such trade secrets to Legacy Wealth Partners.

61.     ONB has been irreparably damaged and continues to be irreparably damaged by Wander's illegal conduct.

62.     ONB has invested significant money in attorneys' fees to investigate and seek to stop Wander's illegal conduct.

63.     ONB seeks preliminary and permanent injunctive relief against Wander, as well as actual, compensatory, consequential, liquidated, special, and punitive damages, costs, and attorneys' fees.

**FACTUAL ALLEGATIONS REGARDING LEGACY WEALTH PARTNERS**

64.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

65.     Legacy Wealth Partners is a partnership comprised of two senior partners, Kevin Murphy and Toni Wander, both of whom are former ONB employees and individual Defendants named in this action.

66.     Legacy's website advertises the partnership as offering financial planning and financial advising services.

67.     Legacy, through Murphy and/or Wander, and utilizing ONB trade secrets including customer information, customer preferences, customer preferences, customer contact information, customer risk tolerance, customer portfolios, customer history, solicited ONB's investment and wealth management clients to cease doing business with ONB and to transfer their assets to Legacy.

68.     Legacy, through Murphy and/or Wander, without required consents disclosed confidential client information and trade secrets obtained through ONB to a third party unaffiliated with ONB, a University of Michigan Professor.

69.     Legacy, through Murphy, obtained and utilized trade secret information to recruit and solicit Wander. Legacy, through Murphy and/or Wander, obtained and utilized trade secret information regarding ONB's clients and potential clients

70.     Legacy's website falsely promotes that Murphy manages approximately $120 million in advisory and brokerage assets for his clients as of February 2019.  This publicly advertised information is false, misleading, and deceptive based on the total assets managed by Murphy with ONB and the total assets remaining in client accounts with ONB.

71.     Legacy has displayed advertising in public featuring Murphy and Wander using the same logo and the "Your Legacy Our Focus" slogan and including the description, "New Location Same Focus."

72.     As of March 5, 2019, ONB has received requests to transfer investment accounts for approximately 34 accounts associated with 16 ONB clients previously managed by Murphy and/or Wander.  The assets held in these investment accounts total over $17 million.

73.     ONB has been irreparably damages and continues to be irreparably damaged by Defendant Legacy's illegal conduct.

74.     ONB has invested significant money in attorneys' fees to investigate and seek to stop Defendant Legacy's illegal conduct.

75.     ONB seeks preliminary and permanent injunctive relief against Legacy, as well as actual, compensatory, consequential, liquidated, special, and punitive damages, costs, and attorneys' fees.

## SPECIFIC COUNTS AGAINST DEFENDANT KEVIN MURPHY

### Count I – Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*

76.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

77.     ONB developed and maintained substantial trade secrets, including customer information, customer preferences, customer preferences, customer contact information, customer risk tolerance, customer portfolios, customer history.

78.     Under DTSA, Murphy has a duty not to misappropriate information he knows or has reason to know is trade secret information.

79.     Murphy knew or had reason to know that ONB's confidential and proprietary information he accessed was trade secret information.

80.     Murphy misappropriated ONB's trade secrets by accessing confidential and proprietary information maintained on ONB's Indiana-based servers and using that information after his employment ended in connection with his business, Legacy.

81.     Murphy misappropriated ONB's trade secrets by sending proprietary information to ONB prospective and current clients using his Legacy business name.

82.     Murphy's conduct was willful.

83.     ONB has been damaged by Murphy's misappropriation of trade secrets.

**Count II – Breach of Fiduciary Duty of Loyalty**

84.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

85.     Murphy owed ONB, as its employee and Financial Advisor, a fiduciary duty of loyalty.

86.     Murphy breached that duty of loyalty in undertaking activity for the benefit of Legacy while still employed with ONB, including recruitment of ONB employee Toni Wander and solicitation of ONB clients and prospective clients.

87.     ONB has been damaged as a result of Murphy's breach of said fiduciary duty of loyalty.

**Count III – Breach Of Contract (Non-Solicitation).**

88.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

89.     Murphy entered into a valid and binding agreement during his employment which included a post-employment restrictive covenant barring Murphy from soliciting ONB clients.  The agreement further barred Murphy from communicating with ONB clients following his termination for the purpose of inducing them to use a financial service provider other than ONB or to discourage them from doing business with ONB.

90.     Murphy has and continues to solicit ONB clients and communicated with ONB clients for the purpose of inducing the clients to use a financial services provider other than ONB (Legacy) in violation of that agreement.

91.     ONB has been damaged as a result of Murphy's breach of said agreement.

**Count IV – Breach Of Contract (Confidentiality).**

92.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

93.     Murphy entered into a valid and binding agreement during his employment which included a confidentiality provision regarding ONB's confidential information and trade secrets, including information about clients' accounts and services, and requiring Murphy to keep such company information confidential at all times.   The provision further precluded Murphy from disclosing such confidential company information to any person not employed by ONB.

94.     Murphy has used ONB's confidential client information in connection with and support of his work for Legacy.

95.     Murphy further has shared ONB's confidential client information with an individual not employed by ONB, Norman Herbert.

96.     ONB has been damaged as a result of Murphy's breach of said agreement.

**Count V – Lanham Act, 15 U.S.C. § 1125(a)(1)(B) *et seq.*, (False Advertising).**

97.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

98.     ONB offers financial advising, planning, investment, and wealth management services to clients.

99.     Murphy, as a Senior Partner at Legacy, maintains a website for Legacy, publicly available on the internet, which commercially advertises Legacy Wealth Partners as a partnership offering financial planning and financial advising services.

100.     Legacy, through its Senior Partners Murphy and Wander, displays public commercial advertising featuring Murphy and Wander using the "Your Legacy Our Focus" mark/name and including the description, "New Location Same Focus."

101.     Legacy's commercial advertising implies that the Legacy business has been in operation and servicing clients prior to the opening of its current location and while Murphy and Wander were providing financial advising and planning services for ONB and to ONB's clients.   The

commercial advertising further implies that financial services offered by Murphy and/or Wander through or on behalf of ONB were instead services offered through or on behalf of Legacy.

102.     Legacy's website states that Murphy manages approximately $120 million in advisory and brokerage assets for clients as of February 2019.

103.     Murphy, as a Senior Partner at Legacy, knowingly and intentionally included the identified content in Legacy's commercial advertising and website.

104.     The identified content included in Legacy's commercial advertising and website are false or misleading statements of fact about Legacy and about the financial services offered by Murphy and Wander through Legacy.

105.     This identified content included in Legacy's commercial advertising and website deceived or had the capacity to deceive a substantial segment of ONB's current and potential clients.

106.     The false and misleading content included in Legacy's commercial advertising and website are material and likely to have influenced the purchasing decisions of ONB's current and potential clients.

107.     ONB has been damaged as a result of Murphy's false advertising.

**Count VI – Lanham Act, 15 U.S.C. § 1125(a)(1)(A) *et seq.*, (False Association).**

108.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

109.     ONB offers financial advising, planning, investment, and wealth management services to clients and has exclusive rights to and ownership over its services.

110.     On February 3, 2017, Murphy attempted to register a trademark with the U.S. Patent and Trademark Office for the word or mark, "Your Legacy Our Focus."

111.     Beginning as early as 2017, Murphy began providing financial advisor services for ONB under the guise of the brand, name, word, and/or mark, "Your Legacy Our Focus."

112.    Murphy used the brand, name, word, and/or mark "Your Legacy Our Focus" in connection with providing and selling ONB's financial advising services.  Murphy included the brand, name, word, and/or mark, "Your Legacy Our Focus" and the web address "www.yourlegacyourfocus.com" in email communications sent during his employment with ONB and to ONB current and prospective clients, as well as in proposal materials provided by Murphy to ONB's prospective clients for ONB's services.

113.    Murphy and Wander formed a partnership under the name Legacy Wealth Partners which maintains a website under the domain name "www.yourlegacyourfocus.com" and displays the "Your Legacy Our Focus" word/mark on the website.

114.    Legacy, Murphy, and Wander intentionally used a brand, name, word, and/or mark associated with Legacy in connection with services offered through or on behalf of ONB to ONB current and prospective clients.

115.    Legacy, Murphy, and Wander's use of the brand, name, word, and/or mark associated with Legacy in connection with ONB financial services confused or deceived ONB prospective and current clients as to the affiliation, connection, or association of Legacy with ONB and/or to the origin, sponsorship, or approval of Legacy's services or commercial activities by ONB.

116.    ONB is unaffiliated with Legacy, has no connection or association with Legacy, and has not originated, sponsored or approved in any way of Legacy's services.

117.    Defendants' acts, creating and causing a false and deceptive association of Legacy with ONB, are material and were intended to or likely to have influenced the purchasing decisions of ONB's current and potential clients.

118.    ONB has been damaged as a result of Murphy's false association of Legacy with ONB.

WHEREFORE, ONB prays for judgment against Defendant Kevin Murphy and requests the following relief against Murphy:

(1) That the Court issue an Order granting ONB's Motion for a Preliminary and Permanent Injunction enforcing the contract between Murphy and ONB, prohibiting Murphy from misappropriating ONB trade secrets, and prohibiting Murphy from engaging in false advertising and false association;

(2) That ONB be awarded actual, compensatory, consequential, liquidated, and special damages in an amount to be determined at trial;

(3) That ONB be awarded punitive damages;

(4) That ONB be awarded attorneys' fees and costs associated with bringing and prosecuting this action;

(5) That ONB be awarded prejudgment interest; and

(6) That ONB be awarded such other and further relief as this Court deems just and proper.

**SPECIFIC COUNTS AGAINST DEFENDANT TONI WANDER**

**Count VII – Breach Of Fiduciary Duty Of Loyalty.**

119.    ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

120.    Wander owed ONB, as its employee and Financial Analyst, a fiduciary duty of loyalty.

121.    Wander breached that duty of loyalty in undertaking activity for the benefit of Legacy while still employed with ONB, including solicitation of ONB prospective and current clients and using ONB's confidential information for the benefit of Legacy.

122.    ONB has been damaged as a result of Wander's breach of said fiduciary duty of loyalty.

**Count VIII - Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq***

123.    ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

124.    ONB developed and maintained substantial trade secrets, including customer information, customer preferences, customer preferences, customer contact information, customer risk tolerance, customer portfolios, customer history.

125.    Under DTSA, Wander has a duty not to misappropriate information she knows or has reason to know is trade secret information.

126.    Wander knew or had reason to know that ONB confidential and proprietary information she accessed was trade secret information.

127.    Subject to a reasonable opportunity for investigation and discovery, Wander misappropriated ONB trade secrets.

128.    In her job as a Financial Analyst, Wander had access to confidential information including but not limited to ONB current and prospective client documents and account information.

129.    Subject to a reasonable opportunity for investigation and discovery, Wander has accessed and used confidential ONB information to solicit ONB clients, including for the benefit of Legacy.

130.    ONB has been damaged by Wander's misappropriation of trade secrets.

**Count IX – Tortious Interference With Contract.**

131.    ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

132.    ONB and Murphy had a contractual employment agreement.

133.    Wander knew or should have known about the contractual relationship between Murphy and ONB.

134.    Wander used ONB's confidential proprietary information to solicit ONB clients and prospects, for the benefit of Wander and Legacy.

135.     Wander benefitted from Murphy breaching his agreement not to solicit ONB clients or to communicate with ONB clients for the purpose of inducing them to use any other financial service provider other than ONB or otherwise discourage them from doing business with ONB.

136.     Wander's interference was not justified.

137.     Wander's interference caused harm to ONB.

**Count X – Lanham Act, 15 U.S.C. § 1125(a)(1)(B) *et seq.*, (False Advertising).**

138.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

139.     ONB offers financial advising, planning, investment, and wealth management services to clients.

140.     Wander, as a Senior Partner at Legacy, maintains a website for Legacy, publicly available on the internet, which commercially advertises Legacy Wealth Partners as a partnership offering financial planning and financial advising services.

141.     Legacy, through its Senior Partners Murphy and Wander, displays public commercial advertising featuring Murphy and Wander using the "Your Legacy Our Focus" mark/name and including the description, "New Location Same Focus."

142.     Legacy's commercial advertising implies that the Legacy business has been in operation and servicing clients prior to the opening of its current location and while Murphy and Wander were providing financial advising and planning services for ONB and to ONB's clients.  The commercial advertising further implies that financial services offered by Murphy and/or Wander through or on behalf of ONB were instead services offered through or on behalf of Legacy.

143.     Legacy's website states that Murphy manages approximately $120 million in advisory and brokerage assets for clients as of February 2019.

144.    Wander, as a Senior Partner at Legacy, knowingly and intentionally included the identified content in Legacy's commercial advertising and website.

145.    The identified content included in Legacy's commercial advertising and website are false or misleading statements of fact about Legacy and about the financial services offered by Murphy and Wander through Legacy.

146.    This identified content included in Legacy's commercial advertising and website deceived or had the capacity to deceive a substantial segment of ONB's current and potential clients.

147.    The false and misleading content included in Legacy's commercial advertising and website are material and likely to have influenced the purchasing decisions of ONB's current and potential clients.

148.    ONB has been damaged as a result of Wander's false advertising.

**Count XI – Lanham Act, 15 U.S.C. § 1125(a)(1)(A) _et seq._, (False Association).**

149.    ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

150.    ONB offers financial advising, planning, investment, and wealth management services to clients and has exclusive rights to and ownership over its services.

151.    On February 3, 2017, Murphy attempted to register a trademark with the U.S. Patent and Trademark Office for the word or mark, "Your Legacy Our Focus."

152.    Beginning as early as 2017, Murphy began providing financial advisor services for ONB under the guise of the brand, name, word, and/or mark, "Your Legacy Our Focus."

153.    Murphy used the brand, name, word, and/or mark "Your Legacy Our Focus" in connection with providing and selling ONB's financial advising services.  Murphy included the brand, name, word, and/or mark, "Your Legacy Our Focus" and the web address "www.yourlegacyourfocus.com" in email communications sent during his employment with ONB and

to ONB current and prospective clients, as well as in proposal materials provided by Murphy to ONB's prospective clients for ONB's services.

154.    Murphy and Wander formed a partnership under the name Legacy Wealth Partners which maintains a website under the domain name "www.yourlegacyourfocus.com" and displays the "Your Legacy Our Focus" word/mark on the website.

155.    Legacy, Murphy, and Wander intentionally used a brand, name, word, and/or mark associated with Legacy in connection with services offered through or on behalf of ONB to ONB current and prospective clients.

156.    Legacy, Murphy, and Wander's use of the brand, name, word, and/or mark associated with Legacy in connection with ONB financial services confused or deceived ONB prospective and current clients as to the affiliation, connection, or association of Legacy with ONB and/or to the origin, sponsorship, or approval of Legacy's services or commercial activities by ONB.

157.    ONB is unaffiliated with Legacy, has no connection or association with Legacy, and has not originated, sponsored or approved in any way of Legacy's services.

158.    Wander's acts, creating and causing a false and deceptive association of Legacy with ONB, are material and were intended to or likely to have influenced the purchasing decisions of ONB's current and potential clients.

159.    ONB has been damaged as a result of Wander's false association of Legacy with ONB.

WHEREFORE, ONB prays for judgment against Defendant Toni Wander and requests the following relief against Wander:

(1) That the Court issue an Order granting ONB's Motion for a Preliminary and Permanent Injunction enforcing the contract between Murphy and ONB, prohibiting Wander from interfering with the contract, prohibiting Wander from misappropriating ONB trade secrets, and prohibiting Wander from engaging in false advertising or false association;

(2) That ONB be awarded actual, compensatory, consequential, liquidated, and special damages in an amount to be determined at trial;

(3) That ONB be awarded punitive damages;

(4) That ONB be awarded attorneys' fees and costs associated with bringing and prosecuting this action;

(5) That ONB be awarded prejudgment interest; and

(6) That ONB be awarded such other and further relief as this Court deems just and proper.

**SPECIFIC COUNTS AGAINST DEFENDANT LEGACY WEALTH PARTNERS**

**Count XII – Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.***

160.    ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

161.    ONB developed and maintained substantial trade secrets, including customer information, customer preferences, customer preferences, customer contact information, customer risk tolerance, customer portfolios, and customer history.

162.    Under DTSA, Legacy has a duty not to misappropriate information it knows or has reason to know is trade secret information.

163.    Legacy knew or had reason to know that ONB's confidential and proprietary information was trade secret information.

164.    Legacy misappropriated ONB trade secrets by using confidential client information to compete against ONB and to encourage and induce ONB clients to cease doing business with ONB and/or to use Legacy as their financial services provider.

165.    Upon information and belief, Legacy has misappropriated ONB trade secrets to induce approximately ten investment clients to transfer their accounts from ONB to Legacy and that such accounts held assets totaling over $11 million.

166.     Legacy's conduct was willful, and included direct involvement of its two Senior Partners, Kevin Murphy and Toni Wander.

167.     ONB has been damaged by Legacy's misappropriation of trade secrets.

**Count XIII – Tortious Interference With Contract and Business Relationships.**

168.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

169.     ONB and Murphy had a contractual employment agreement.

170.     Legacy knew or should have known about the contractual relationship between Murphy and ONB.

171.     Legacy, acting through its partners, used ONB's confidential proprietary information to solicit ONB clients and prospects, for the benefit of Legacy and in breach of ONB's agreement with Murphy.

172.     Legacy benefitted from Murphy breaching his agreement not to solicit or communicate with ONB clients or induce ONB clients to use any other financial service provider other than ONB or otherwise discourage them from doing business with ONB.

173.     Legacy has interfered with ONB's contractual and business relationships with ONB customers.

174.     Legacy's interference was not justified.

175.     Legacy's interference caused harm to ONB.

**Count XIV – Lanham Act, 15 U.S.C. § 1125(a)(1)(B) *et seq.*, (False Advertising).**

176.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

177.     ONB offers financial advising, planning, investment, and wealth management services to clients.

178.     Legacy's website, publicly available on the internet, commercially advertises Legacy Wealth Partners as a partnership offering financial planning and financial advising services.

179.     Legacy, through its Senior Partners Murphy and Wander, displays public commercial advertising featuring Murphy and Wander using the "Your Legacy Our Focus" mark/name and including the description, "New Location Same Focus."

180.     Legacy's commercial advertising implies that the Legacy business has been in operation and servicing clients prior to the opening of its current location and while Murphy and Wander were providing financial advising and planning services for ONB and to ONB's clients. The commercial advertising further implies that financial services offered by Murphy and/or Wander through or on behalf of ONB were instead services offered through or on behalf of Legacy.

181.     Legacy's website states that Murphy manages approximately $120 million in advisory and brokerage assets for clients as of February 2019.

182.     Legacy, Murphy, and Wander knowingly and intentionally included the identified content in Legacy's commercial advertising and website.

183.     The identified content included in Legacy's commercial advertising and website are false or misleading statements of fact about Legacy and about the financial services offered by Murphy and Wander through Legacy.

184.     This identified content included in Legacy's commercial advertising and website deceived or had the capacity to deceive a substantial segment of ONB's current and potential clients.

185.     The false and misleading content included in Legacy's commercial advertising and website are material and likely to have influenced the purchasing decisions of ONB's current and potential clients.

186.     ONB has been damaged as a result of Legacy, Murphy, and Wander's false advertising.

**Count XV – Lanham Act, 15 U.S.C. § 1125(a)(1)(A) *et seq.*, (False Association).**

187.     ONB repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

188.     ONB offers financial advising, planning, investment, and wealth management services to clients and has exclusive rights to and ownership over its services.

189.     On February 3, 2017, Murphy attempted to register a trademark with the U.S. Patent and Trademark Office for the word or mark, "Your Legacy Our Focus."

190.     Beginning as early as 2017, Murphy began providing financial advisor services for ONB under the guise of the brand, name, word, and/or mark, "Your Legacy Our Focus."

191.     Murphy used the brand, name, word, and/or mark "Your Legacy Our Focus" in connection with providing and selling ONB's financial advising services.  Murphy included the brand, name, word, and/or mark, "Your Legacy Our Focus" and the web address "www.yourlegacyourfocus.com" in email communications sent during his employment with ONB and to ONB current and prospective clients, as well as in proposal materials provided by Murphy to ONB's prospective clients for ONB's services.

192.     Murphy and Wander formed a partnership under the name Legacy Wealth Partners which maintains a website under the domain name "www.yourlegacyourfocus.com" and displays the "Your Legacy Our Focus" word/mark on the website.

193.     Legacy, Murphy, and/or Wander intentionally used a brand, name, word, and/or mark associated with Legacy in connection with services offered through or on behalf of ONB to ONB current and prospective clients.

194.     Legacy, Murphy, and/or Wander's use of the brand, name, word, and/or mark associated with Legacy in connection with ONB financial services confused or deceived ONB

prospective and current clients as to the affiliation, connection, or association of Legacy with ONB and/or to the origin, sponsorship, or approval of Legacy's services or commercial activities by ONB.

195.    ONB is unaffiliated with Legacy, has no connection or association with Legacy, and has not originated, sponsored or approved in any way of Legacy's services.

196.    Defendants' acts, creating and causing a false and deceptive association of Legacy with ONB, are material and were intended to or likely to have influenced the purchasing decisions of ONB's current and potential clients.

197.    ONB has been damaged as a result of Legacy, Murphy, and Wander's false association of Legacy with ONB.

WHEREFORE, ONB prays for judgment against Defendant Legacy and requests the following relief against Legacy:

(1) That the Court issue an Order granting ONB's Motion for a Preliminary and Permanent Injunction enforcing the contract between Murphy and ONB, prohibiting Legacy from interfering with the contract, prohibiting Legacy from misappropriating ONB trade secrets, and prohibiting Legacy from engaging in false advertising and false association;

(2) That ONB be awarded actual, compensatory, consequential, liquidated, and special damages in an amount to be determined at trial;

(3) That ONB be awarded punitive damages;

(4) That ONB be awarded attorneys' fees and costs associated with bringing and prosecuting this action;

(5) That ONB be awarded prejudgment interest; and

(6) That ONB be awarded such other and further relief as this Court deems just and proper.

Dated: March 8, 2019                          Respectfully submitted,


                                              _s/ John R. Maley_____
                                              John R. Maley

                                              John R. Maley
                                              Jackie S. Gessner
                                              BARNES & THORNBURG LLP
                                              11 South Meridian Street
                                              Indianapolis, Indiana  46204
                                              Telephone:      (317) 236-1313
                                              Facsimile:      (317) 231-7433
                                              E-mail: jmaley@btlaw.com
                                                           jackie.gessner@btlaw.com

                                              *Counsel for Plaintiffs*